## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**JOHN FLYNN,**

on behalf of himself and
all others similarly situated,

       Plaintiff,

v.

**SHELL CHEMICAL APPALACHIA, LLC,**

       Defendant.

Case No.   2:24-cv-193

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

## INTRODUCTION

1.    Plaintiff brings this class action against Shell Chemical Appalachia, LLC, (hereinafter, "Defendant") in relation to its ownership and operation of the ethylene cracker plant at 300 Frankfort Road, Town of Monaca, County of Beaver, Commonwealth of Pennsylvania (hereinafter, the "Facility").

2.    Through Defendant's operation and maintenance of the Facility, it wrongfully and tortiously released substantial and unreasonable noxious odors, fugitive dust, and light emissions (collectively, "Emissions") that invade Plaintiff's and the putative Class' properties, causing damages through private nuisance, public nuisance, negligence, and trespass.

**THE PARTIES**

3.      At all times relevant hereto, Plaintiff John Flynn has resided and intends to remain at 150 Evergreen Circle, Beaver, Pennsylvania 15009. Plaintiff is a citizen of the State of Pennsylvania.

4.      Defendant is a Delaware limited liability company with a mailing address of 300 Frankford Road, Monaca, PA 15061. Defendant's members are citizens of at least Delaware and Texas, as Shell Oil Company, Inc., Defendant's principal member, is incorporated in Delaware and headquartered in Texas.

5.      Defendant accepts service through its registered agent, CT Corporation System, at 600 N. 2nd Street, #401, Harrisburg, PA 17101.

**JURISDICTION AND VENUE**

6.      This Court has original jurisdiction under the Class Action Fairness Act (CAFA) 28 U.S.C. § 1332(d). There are 100 or more class members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Additionally, Defendant is a citizen of a different state from at least one Plaintiff, establishing minimal diversity.

7.      Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of at least Delaware and Texas, with its principal place of business at 300 Frankford Road, Monaca, PA 15061.

8.      The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the Commonwealth of Pennsylvania because it regularly conducts substantial business in Pennsylvania through its ownership and operation of the Facility.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and

because much, if not all, of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

10.     Defendant owns and operates a petrochemicals plant which consists of an ethylene cracker, a polyethylene derivatives unit, and a wastewater treatment plant.

11.     Defendant's production process involves first separating ethane gas from shale natural gas to produce ethylene, a root chemical for plastics, resins, adhesives, and other synthetic products.

12.     This process is accomplished through heating the ethane to extremely high temperatures until the molecular bonds holding ethane together break. The resulting ethylene is then processed into resins and other synthetic derivatives.

13.     However, this process produces significant waste, primarily in the form of Ethylene Cracker Residue (ECR). ECR is a highly viscous black liquid with a distinctive sweet gasoline smell.

14.     This ECR, along with numerous other waste products, are treated at the Facility's on-site wastewater treatment plant.

15.     Additionally, significant and frequent operational upsets at the Facility have resulted in similarly frequent "flaring" occurrences, where Defendant burns off excess gases that would otherwise vent directly into the ambient atmosphere.

16.     Defendant's Facility operates pursuant to Plan Approval No. 04-00740C (the "Permit)", which sets a limit on the amount of volatile organic compounds (VOCs), a group of potentially odorous pollutants, that the Facility can emit directly into the ambient air.

17.     In attempts to stay within the VOC emissions boundaries of its permits, Defendant will simply burn off excess VOCs and other emissions as a contingency before they enter the atmosphere.

18.     A specific condition of Defendant's Permit states that Defendant may not permit the emission into the outdoor atmosphere of any malodorous air contaminants in such a manner that the malodors are detectible outside of the Defendant's property.

19.     As a result of numerous and continuing permit violations, the Pennsylvania Department of Environmental Quality (PADEP) has issued a litany of Notices of Violation (NOVs) to Defendant, many of which state that the violative conduct described therein is "unlawful ... and a public nuisance" as defined by the Pennsylvania Air Pollution Control Act.

20.     Defendant's Facility has a well-documented history of failing to control the emissions generated by its operations. Examples include, but are not limited to, the following:

  a.  In a NOV dated December 14, 2022, the PADEP notified Defendant that it was in violation of its 12-month rolling total emissions limitation of 516.2 tons of VOCs for 2022, and having emitted over 140 tons of VOCs from September 2022 to October 2022 alone.

  b.  Defendant has received a litany of Notices of Violation (NOVs) from the PADEP since 2020, each of which constitutes a public nuisance as defined by the Air Pollution Control Act (25 P.S. Section 4013). A sampling of these NOVS include the following:

    • September 27, 2021- PADEP issued an NOV to Defendant after confirming that Defendant released malodorous air contaminants and

4

fugitive particulate matter into the atmosphere beyond the Facility's property boundary.

- September 20, 2022, October 27, 2022, April 3, 2023- The PADEP observed intermittent visible emissions from the HP ground flares in violation of Shell's permit which requires that "flares shall be designed and operated with no visible emissions … except for a period not to exceed a total of 5 minutes during any 2 consecutive hours."

- April 17, 2023- "Shell reported to the Department that from January 25, 2023, through February 16, 2023, malodor emissions were observed outside of Shell's property. The malodor emissions were caused by hydrocarbons in the Wastewater Treatment Plant (WWTP) biotreaters." This violation was the result of "a valve left open between the WWTP and a set of liquid hydrocarbon-containing drums associated with the ECU."

- May 16, 2023- PADEP "confirmed that malodorous air contaminants from the Shell facility were detectable outside of Shell's property" on April 12, 2023, based on malodor emissions observed from the Wastewater Treatment Plant (WWTP) at Shell and detected near the Vanport Volunteer Fire Department.

c. As a consequence of the numerous complaints and NOVs issued to Defendant since the Facility began operations in November 2019, the PADEP instituted formal enforcement actions against Defendant that culminated in a Consent

Decree being agreed to by the Parties on May 25, 2023, less than 7 months after the Facility began ethane cracking operations.

d. Numerous media reports have documented the horrible experiences of local residents due to Defendant's noxious odor, fugitive dust, and light emissions.

21.  Over 75 households have already communicated with Plaintiff's counsel documenting Defendant's Emissions and the nuisance that these Emissions create for the surrounding residential neighborhoods:

a. Putative Class Members Lloyd and Karen Grimes report a "strong chemical smell, very noisy, annoying flashing lights all night long. Large fire flare ups" and that "when [the Facility] is in operation, we don't open our windows."

b. Putative Class Members Verlenee and Antoine Horton stated that they "can't sit outside and enjoy watching TV on patio" when the odors are present.

c. Putative Class Members Paul and Prudence Markgraf reported that they "had to shut windows at times and didn't want to sit outside when the weather permitted" due to the Facility's emissions.

d. Putative Class Member Milton Elder stated that "I can never  sit on my porch, we can't garden, we can't open the new windows that we paid $1,000 for not even 2 years or so ago. We are constantly dusting every day now, our house wasn't as dusty as it is now, before the plant opened."

22.  The invasion of Plaintiff's property by Emissions has interfered with Plaintiff's use and enjoyment of his property, resulting in substantial damages. Plaintiff John Flynn reported that "I cannot sit on my patio without the smell or noise from this plant. Sounds like a freight train 24 hours a day, some nights there is a bright glow in the sky."

6

23.     Plaintiff's property has been, and continues to be, physically invaded by Defendant's Emissions.

24.     The Emissions that entered Plaintiff's property originated from the Facility, where they are generated as a result of Defendant's ethane cracking process, or waste products resulting therefrom.

25.     A properly maintained, operated, and/or constructed ethane cracking plant will not release Emissions into the surrounding residential areas.

26.     Defendant's operation, maintenance, engineering, control, and/or use of the Facility has caused Emissions to invade the properties of Plaintiff and all others similarly situated, causing property damage.

27.     Defendant intentionally, recklessly, willfully, wantonly, maliciously, and/or negligently failed to properly construct, maintain, and/or operate the Facility, and caused the invasion of Plaintiff's property by Emissions on intermittent and reoccurring dates too numerous to individually recount.

28.     Defendant has failed to install and/or maintain adequate technology to control the release of Emissions. Such failures include, but are not limited to, the following:

   a. Failure to construct, operate, and/or maintain the Facility's wastewater treatment facilities (WWTP) to prevent overflows of hydrocarbons associated with VOC;

   b. Failure to operate the Facility in a manner that complies with VOC emissions requirements and regulations, resulting in the regular flaring of malodorous emissions into the atmosphere and surrounding residential areas;

   c. Failure to install and/or operate adequate odor mitigation equipment to reduce odors from normal cracking processes, flaring, and/or wastewater treatment; and

   d. Failure to properly store and treat its various waste materials, including hydrocarbons.

**CLASS ALLEGATIONS**

7

**A.     Class Definition**

29.     Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification pursuant to Federal Rules of Civil Procedure 23. Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All owner/occupants or renters of residential property from 2 years of the filing of this Complaint to the present who are located within a two (2) mile radius of the Facility.**

This proposed Class Definition is subject to modification as discovery progresses. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

30.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

a.     The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

b.     There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

c.     Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d.     A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e.     The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

f.     There are no unusual difficulties foreseen in the management of this class action; and

g.     Plaintiff, whose claims are typical of those of the Class, through experienced counsel, will zealously and adequately represent the Class.

**B.     Numerosity**

31.     Based on available census data, there are 3,192 housing units within 2.0 miles of the Facility. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

**C.     Commonality**

32.     Pursuant to Fed. R. Civ. P. 23(b)(3), numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to, the following:

    a.     whether and how Defendant negligently, intentionally, recklessly, and/or willfully, failed to operate and maintain the Facility;

    b.     whether Defendant owed any duties to Plaintiff;

    c.     which duties Defendant owed to Plaintiff;

    d.     whether and to what extent Defendant failed to exercise reasonable care in operating and maintaining the Facility;

    e.     which steps Defendant have and have not taken in order to control the release of Emissions from the Facility;

    f.     whether and to what extent the Facility's Emissions were dispersed in and around the Class Area;

    g.     whether Defendant's Facility caused Emissions to be dispersed in and around the Class Area;

    h.     whether Defendant caused owner-occupants and renters of residential property of ordinary sensibilities to suffer harm;

    i.     whether it was reasonably foreseeable that Defendant's failure to properly operate and maintain the Facility would result in off-site odor emissions, including the invasion of private property interests in and around the Class Area;

    j.     whether Defendant's actions were unreasonable;

    k.     whether Defendant's Emissions have substantially interfered with the ability of residents of ordinary sensibilities within the Class Area to use and enjoy their private residences;

l.      whether the degree of harm suffered by Plaintiff and the class constitutes a substantial interference with their private property rights;

m.      whether private residential property values within the Class Area have been adversely impacted; and

n.      the proper measure of damages incurred by Plaintiff and the Class.

33.     Plaintiff has the same interest in this matter as all the other members of the Class, and his claims are typical of all members of the Class.  If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories, and seek the same type of relief.

34.     The claims of Plaintiff and the other Class members have a common cause, and their claims are of the same type. The claims originate from the same common source and the same failure(s) of Defendant to properly operate and maintain the Facility.

35.     Class Members have suffered similar injuries and harm as a result of the invasion of their private residential properties by Emissions released from Defendant's facility.

**E.      Adequacy of Representation**

36.     Plaintiff's claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiff as representatives of the Class.  Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

37.     Plaintiff has retained the services of counsel who are highly experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by noxious industrial emissions. Plaintiff's counsel will vigorously prosecute

this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class members.

**D.     Class Treatment Is The Superior Method of Adjudication.**

38.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

      a.  Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

      b.  Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

      c.  The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

      d.  The proposed class action is manageable and administratively feasible.

## CAUSE OF ACTION I

### NEGLIGENCE

39.     Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

40.     In maintaining, operating, controlling, engineering, constructing, and/or designing the Facility, Defendant has a duty to exercise ordinary care and diligence so that Emissions do not invade Plaintiff's property.

41.     Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained, operated, engineering, constructed, and/or designed the Facility and knew, or should have known, that such actions would cause Plaintiff's property to be invaded by Emissions.

42.     As a direct and proximate result of Defendant's failure to exercise ordinary care, Plaintiff's and the Class' homes, lands, and properties are invaded by Emissions on occasions too numerous to list individually.

43.     Such invasions of Plaintiff and the Class' properties by Defendant's Emissions were the foreseeable result of Defendant's conduct as described herein, and Plaintiff and the Class suffered damages to their properties therefrom. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and diminution of property values.

44.     Defendant knowingly, recklessly, and with a conscious disregard for the rights of the Plaintiff and Class allowed conditions to exist and perpetuate which caused Emissions to physically invade Plaintiff's and the Class' properties.

45.     Defendant's negligence was the result of a conscious indifference to the harm caused to the Plaintiff's and the Class' properties, which therefore entitles Plaintiff and the Class to an award for compensatory, injunctive, and/or exemplary relief.

## CAUSE OF ACTION II

## PRIVATE NUISANCE

46.     Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

47.     Defendant owed, and continue to owe, a duty to Plaintiff and the Class to prevent and abate the unreasonable interference with, and invasion of, their private property interests.

48.     The Emissions that entered Plaintiff's and the Class' properties originated from the Facility, which was improperly and unreasonably constructed, maintained, engineered, designed, and/or operated by Defendant.

12

49.     The Emissions that invade Plaintiff's and the Class' properties are indecent and offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. Such obstruction includes, but is not limited to, the following:

      a. Forcing Plaintiff and the Class to remain inside their homes and forgo the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

      b. Causing Plaintiff and the Class to keep their doors and windows closed when the weather would otherwise permit;

      c. Depriving Plaintiff and the Class of the full value of their homes and properties;

      d. Causing Plaintiff and the Class embarrassment, inconvenience, and annoyance including, but not limited to, creating a reluctance to invite guests to their homes and preventing Plaintiff and the Class from utilizing the outdoor areas of their respective properties.

50.     Plaintiff and the Class properties are situated in such proximity to Defendant's Facility as to constitute neighboring properties, in that they are near enough to be impacted by the tangible effects of Emissions released from the Facility.

51.     By negligently constructing, maintaining, operating, engineering, and/or controlling the Facility, thereby causing Emissions to physically invade Plaintiff's and the Class' properties, Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interfered with Plaintiff's and the Class' use and enjoyment of their properties.

52.     As a foreseeable, direct, and proximate result of the foregoing misconduct by Defendant, Plaintiff and the Class have suffered damages to their properties as alleged herein, including but not limited to loss of full use and enjoyment of their properties and diminution in property values.

53.     Plaintiff and the Class did not consent to the invasion of their properties by Emissions from Defendant's Facility, which is ongoing and constitutes a private nuisance.

54.     Whatever social utility the Facility provides is clearly outweighed by the substantial harm suffered by Plaintiff and the Class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure significant loss in the use and value of their properties.

55.     Defendant is liable for all damages arising from the creation and maintenance of such nuisance, including compensatory, injunctive, and/or exemplary relief.

### CAUSE OF ACTION III

### PUBLIC NUISANCE

56.     Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

57.     Plaintiff and the Class utilize their properties as residences and reside within the Class Area.

58.     The Emissions that entered Plaintiff and the Class' properties originated from Defendant's Facility, which is located directly within the proposed Class Area.

59.     By failing to reasonable design, operate, repair, and/or maintain its Facility, Defendant has caused an invasion of Plaintiff's property by Emissions on usually frequent occasions that are too numerous to individually list herein.

60.     The Emissions invading Plaintiff and the Class' properties are indecent and offensive to Plaintiff and the Class, and similarly indecent and offensive to individuals with ordinary sensibilities, and obstruct the free use of Plaintiff's and the Class' properties so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

61.    Defendant knew that it was releasing, and continues to release, Emissions onto neighboring properties yet failed to take reasonably adequate steps to abate the nuisance. Defendant owed and continues to owe a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

62.    Defendant, by failing to reasonably repair, operate, and/or maintain its Facility so as to abate the nuisance has acted, and continues to act, intentionally, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

63.    As a foreseeable, direct, and proximate cause of Defendant's previously described conduct, Plaintiff and the Class have suffered damages to their properties as alleged herein.

64.    By releasing Emissions that physically invaded Plaintiff and the Class properties, Defendant created a nuisance that substantially and unreasonably impaired Plaintiff and the Class use and enjoyment of their properties on usually frequent occasions too numerous to list individually.

65.    Such substantial and unreasonable interferences include, but are not limited to inability to open windows when Emissions are present, inability to utilize outdoor spaces, and the inability for Plaintiff and the Class to invite guests to their homes due to the embarrassment and annoyance of Emissions on Plaintiff and the Class' respective properties.

66.    Apart from the private property damage incurred by Plaintiff and the Class, Defendant's Emissions have additionally substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

67.    Plaintiff suffered and continues to suffer special harm to private property interests, including interference with the use and enjoyment of private land and property, deprivation of full value of private property, and diminished property values. These damages are different in

kind and are additional to damages suffered by the public at-large exercising the same common right to breathe uncontaminated and unpolluted air.

68.     Plaintiff and the Class did not consent to the invasion of their properties by Emissions from Defendant's Facility, which is ongoing and constitutes a private nuisance.

69.     Whatever social utility the Facility provides is clearly outweighed by the substantial harm suffered by Plaintiff and the Class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure significant loss in the use and value of their properties.

70.     Defendant's substantial and unreasonable interferences with Plaintiff and the Class' property rights constitutes a nuisance for which Defendant is liable to Plaintiff and the Class for all damages arising therefrom, including compensatory, injunctive, and/or exemplary relief.

## CAUSE OF ACTION IV

### TRESPASS BY FUGITIVE DUST

71.     Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

72.     Defendant reckless, willfully, wantonly, maliciously, and/or negligently failed to properly construct, maintain, and/or operate the Facility which caused fugitive dust to physically invade and enter upon Plaintiff's property on occasions too numerous to identify independently.

73.     As a direct and proximate result of Defendant's conduct, fugitive dust physically invaded, entered upon, settled upon, and accumulated upon Plaintiff's property.

74.     It was reasonably foreseeable that Defendant's failure to properly construct, maintain, and/or operate the Facility would result in an invasion of Plaintiff's property by fugitive dust.

75.     The fugitive dust that has been and continues to be emitted by Defendant's Facility has invaded and continues to invade Plaintiff's property and interferes with Plaintiff's interests in the possession, use, and enjoyment of his property and constitutes a continuous trespass thereupon.

76.     Plaintiff did not consent to the physical invasion of his property by fugitive dust.

77.     Defendant's action resulting in the trespass upon Plaintiff's land were and continue to be willful, malicious, and made with a conscious disregard for the rights of Plaintiff, entitling Plaintiff to compensatory relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed.R.Civ.P. 23;

B. Designation of Plaintiff as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class as against the Defendant;

D. An award to Plaintiff and the Class of compensatory damages, including pre- and post-judgment interest;

E. An award of attorney's fees and costs, including pre-and post- judgment interest;

F. An Order holding that the entrance of the aforementioned Emissions upon Plaintiff and the Class properties constituted a nuisance;

G. An Order holding that the Defendant was negligent in causing Emissions to repeatedly invade and interfere with Plaintiff and the Class private residential properties;

H.  An award to Plaintiff and the Class of injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I.  Such further relief that this Honorable Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

Dated: December 14, 2023

Respectfully Submitted,

*/s/ James E. DePasquale*
James E. DePasquale
Attorney I.D. 30223
1302 Grant Building St.
310 Grant St.
Pittsburgh, PA 15219
(609) 394-8585
jim.depasquale@verizon.net

*/s/ Steven D. Liddle*
Steven D. Liddle*
Matthew Z. Robb*
D. Reed Solt*
**LIDDLE SHEETS COULSON P.C.**
*Pro Hac Vice to be submitted*
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@lsccounsel.com
ncoulson@lsccounsel.com
mrobb@lsccounsel.com

*Attorneys for Plaintiff & the Putative Class*